FILED

2011 Jun-24  PM 01:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

TIARA N. JOHNSON,

       Plaintiff,

vs.                                             CASE NO. CV-10-J-2900-NE

MICHAEL ASTRUE, Commissioner
of Social Security,

       Defendant.

## MEMORANDUM OPINION

The plaintiff, Tiara N. Johnson, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income.

Plaintiff filed her application for benefits on November 26, 2007, alleging an inability to work from January 6, 2006 (R. 88–94).[1] The application was denied initially on February 8, 2008 (R. 70–74), and again by an Administrative Law Judge ("ALJ") on November 18, 2009 (R. 20–44).

---

[1]Supplemental Security Income benefits are not payable for any period prior to the month in which plaintiff filed her application. 20 C.F.R. §§ 416.330, 416.335. Therefore the relevant period for deciding plaintiff's case begins when she filed her application–November 2007.

**Factual Background**

At the time of the hearing before the ALJ, plaintiff was twenty years old, 5'4" tall, and 324 pounds. (R. 57). She had not graduated from high school but had obtained a certificate of attendance, and was in special education classes while in school. (R. 61). She worked briefly but had not worked since the filing date of her application (R. 98–103, 109, 338). Plaintiff alleges an inability to work due to problems from depression, narcolepsy, obesity, lesions and resins, borderline intellectual functioning, and high blood pressure.

The ALJ found that plaintiff had not engaged in substantial gainful activity since her filing date. (R. 22). He found that she had the severe impairments of narcolepsy, obesity, hidradenitis suppurativa, and borderline intellectual functioning, but that her depression and history of substance abuse were not severe. (*Id.*). He found that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (R. 26). Finally, he found that she has the residual functional capacity to perform the full range of light, unskilled work, was capable of performing past relevant work as a fast food worker, and as such, was not disabled. (R. 28, 42, 44).

**Standard of Review**

This court's review of the factual findings in disability cases is limited to

determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

   In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). This court may not decide facts anew, re-weigh the evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision. *Martin*, 894 F.2d at 1529.  This court must affirm the decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

   This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). The Commissioner's "failure to . . . provide the reviewing court with sufficient

3

reasoning for determining that the proper legal analysis has been conducted

mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir.

1991).

### Legal Analysis

Medical listing 12.05 refers to mental retardation as "significantly

subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; i.e., the evidence

demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt.

404, subpt. P, app. 1, Listing 12.05 (2009).

Listing 12.05C states that the required level of severity for mental

retardation is met when the claimant has "[a] valid verbal, performance, or full

scale IQ of 60 through 70 and a physical or other mental impairment imposing an

additional significant work-related limitation of function." 20 C.F.R. pt. 404,

subpt. P, app. 1, Listing 12.05C. In order for a claimant to meet the requirements

under 12.05C, the impairment must satisfy the diagnostic description of 12.05 and

the criteria of listing 12.05C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. A

claimant has an additional mental or physical impairment when the impairment's

effect on "a claimant's ability to perform 'basic work activities' is more than slight

or minimal . . . but less than 'severe.'" *Edwards by Edwards v. Heckler*, 755 F.2d

4

1513, 1515 (11th Cir. 1985).

Plaintiff was sent for a WAIS-III test and clinical interview, which was conducted by Dr. John R. Haney ("Dr. Haney") on January 31, 2008. (R. 344–45). Plaintiff's test resulted in a full scale IQ score of 70, a verbal scale score of 70, and a performance scale score of 76. (R. 344). Dr. Haney found that this corresponded to the second percentile and that the results were similar to those reported from a 2003 evaluation done by plaintiff's school system. (*Id.*). Dr. Haney concluded that plaintiff's "ability to function in most jobs appeared moderately to severely impaired due to [her] physical, intellectual and vocational limitations," and determined that her condition "will probably remain unchanged in the next six to twelve months."[2] (R. 345).

Plaintiff's IQ tests, taken when she was 18, are objective evidence of her intellectual functioning. Two of her IQ scores–the full scale score of 70 and the verbal scale score of 70–are within the range required by 12.05C, indicating mental retardation. Thus, this court should next look to see whether plaintiff has "a physical or other mental impairment imposing an additional significant work-

_____

[2]The ALJ stated, "The undersigned gives little weight to this assessment by a consulting examiner. Dr. Haney performed a psychological evaluation, but he is not qualified to give an assessment as to the claimant's work-related physical or vocational limitations." Regardless of whether Dr. Haney is qualified to give an assessment as to plaintiff's physical or vocational limitations, he *is* qualified to assess plaintiff's intellectual limitations.

related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C.

The ALJ found plaintiff's severe impairments to include hidradenitis suppurativa ("HS"). Listing 8.06 states: "Hidradenitis Suppurativa with extensive skin lesions involving both axillae [underarms], both inguinal areas [groin] or the perineum [vaginal or rectal areas] that persists for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, app. 1, Listing 8.06.

The ALJ determined that "the medical evidence does not show the claimant has experienced outbreaks of [HS] in these areas that last 3 months at a time despite treatment." (R. 39–41).  However, plaintiff's medical records show that she consistently had problems with HS. Although plaintiff's HS seems to have been more of a problem on her chest and neck (R. 381, 386, 398, 419, 425–26), many of her symptoms occurred in the buttock and armpit areas, and the records do not show that the outbreaks were treatable with antibiotics. In March and April 2009, plaintiff was given prescriptions for "several risens on buttocks," "hidradenitis to [left] buttock anal cleft," and "anal cleft abcess." (R. 420–21, 423). On April 8, 2009, Dr. Wayne Thomas ("Dr. Thomas") stated that plaintiff's HS symptoms began one month previously and would render her unable to work for two months. (R. 377). On June 18, 2009, Dr. Thomas stated that her symptoms began two

months previously and would render her unable to work for two months. (R. 376).
On September 28, 2009, plaintiff had "[m]ultiple abscess[es] to various areas,"
including her right armpit. (R. 426). Dr. Thomas stated that plaintiff had
"extensive hydradenitis [sic], multiple abscess," beginning four to six months
previously, that would render plaintiff incapable of performing work for four more
months. (R. 427). Each of these periods alone is enough to satisfy listing 8.06;
combined, plaintiff's complaints of HS on her buttock and axillae last nearly a
year, dwarfing the three month requirement set out by the listing.

Furthermore, plaintiff continuously reported symptoms of depression,
stemming from a 2006 incident in which she awoke to find her nephew dead
beside her in bed; she was diagnosed with depression and took Lexapro[3] for her
symptoms. (R. 58, 273–74, 277, 279–80, 282,  288, 307, 311, 314, 317, 323, 327,
329, 331–32, 381, 424). The ALJ found that plaintiff was not depressed, basing
his finding on plaintiff's statements that she was only attending mental health
treatment because there was a court order requiring her to do so. (R. 23, 278, 291).
However, plaintiff stated several times that she was financially unable to seek
medical treatment or purchase prescriptions. (R. 63, 301, 420, 425). The ALJ

---

[3]Lexapro is an antidepressant drug, prescribed for the treatment major depression disorder
and generalized anxiety disorder. *Physician's Desk Reference* 1176 (Thompson Healthcare, Inc.,
62d ed. 2007).

specifically questioned plaintiff during the hearing regarding her failure to attend

mental health treatment:

> Q      . . . You used to go to mental health real regular but you stopped
>         going. Can you tell me why you stopped going to them?
> A      Yes, sir. I lost my insurance or my Medicaid because I had turned
>        19. And they were going to put me on a sliding plan but they
>        didn't have the funds or something.
> Q      They didn't have the money to provide the care without insurance
>        and you didn't have money to pay them for it.
> A      Right.

(R. 63).[4]  She also requested that forms for the Food Stamp Program be filled out

by her doctors. (R. 376–79, 427). Thus, the ALJ erred in failing to consider

plaintiff's inability to pay in evaluating her noncompliance. *See Dawkins v.*

*Bowen*, 848 F.2d 1211, 1213–14 (11th Cir. 1988) (holding that poverty excuses

noncompliance) (citing *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987);

*Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986); *Dover v. Bowen*, 784 F.2d

335, 337 (8th Cir. 1986); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985)).

Plaintiff's significant limitation of hidradenitis suppurativa, along with her

long-standing history of narcolepsy and depression, easily satisfy the second prong

of Listing 12.05 since they have a marked effect on her ability to do work. Given

---

[4]Additionally, plaintiff missed an appointment because she and her mother "didn't have
enough gas money." (R. 301). Plaintiff's records also reflects occasions where she was "unable to
pay" and "[did] not have any money for [an office visit]." (R. 420, 425).

these impairments, as well as plaintiff's mental limitations, the Social Security

regulations demand a finding of disabled. 20 C.F.R. pt. 404, subpt. P, app. 1,

Listing 12.05.

The ALJ's determination that plaintiff is not disabled is against the

substantial weight of the evidence. The ALJ was required to consider all of

plaintiff's impairments in combination, including impairments he determined were

not severe. *Burgin v. Comm'r*, 2011 WL 1170733 (11th Cir. 2011) (citing *Jamison*

*v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)); *Jones v. Dept. of Health & Human*

*Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Although the ALJ stated that he

considered plaintiff's impairments in combination (R. 26), he could not have; the

ALJ could only reach the result he did by ignoring the objective medical evidence,

which mandates reversal. Taking plaintiff's impairments in combination, this court

finds that the substantial weight of the evidence dictates that plaintiff has been

disabled since her alleged onset date and is therefore entitled to benefits.

## Conclusion

When evidence has been fully developed and points to a specific finding,

the reviewing court may enter the finding that the Commissioner should have

made. *Reyes v. Heckler*, 601 F. Supp. 34, 37 (S.D. Fla. 1984). Thus, this court has

the authority under 42 U.S.C. § 405(g) to reverse the Commissioner's decision

without remand, where, as here, the Comissioner's determination is in plain regard of the overwhelming weight of the evidence. *Davis*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984).

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and this case be **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion. The court shall so rule by separate order.

**DONE** and **ORDERED** this 24th day of June 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE